UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AMY T. WHITE, *et al.*,<br><br>　　　　Defendants. | Case No. 21–cv–17361–MCA–ESK<br><br><br>REPORT AND RECOMMENDATION |

**KIEL**, U.S.M.J.

　　This matter is before the Court on plaintiff American General Life Insurance Company's (American General) motion to enforce settlement agreement (Motion). (ECF No. 46.)  Defendants Gregory J. McDermott, Donna McDermott-Latallade, and Jennifer McDermott Kalawur (collectively, McDermott Siblings) filed a response to the Motion (ECF No. 47) and defendant Amy T. White filed an opposition to the Motion (ECF No. 48).  American General filed a reply in further support of the Motion.  (ECF No. 49.)  For the following reasons, I recommend that the Motion be **GRANTED**.

　　**I.　FACTS AND PROCEDURAL HISTORY**

　　This is an interpleader action filed by American General to determine the proper beneficiaries of a life insurance policy (Policy) issued on the life of Donald J. McDermott (Donald) with a face amount of $1,000,000.  (ECF No. 1 ¶¶ 8, 17.) The Policy's application (Application) listed Donald's "children, Amy T. McDermott,[1] Donna McDermott, [and] Gregory J. McDermott as the owners"

---

[1] Amy White is the same person identified as "Amy T. McDermott" in the Application and Policy.

(Original Owners) of the Policy. (*Id.* ¶ 8.) The Application listed the McDermott Siblings, White, and Doreen McDermott as equal beneficiaries. (*Id.*) Doreen McDermott died in December 2020. (*Id.* n.2.)

After the Policy was issued, the ownership of the Policy was changed to White. (*Id.* ¶ 9.) It is a mystery on what basis American General changed the ownership of the Policy. American General does not have any documents evidencing a change in the Application by Donald to change the ownership solely to White, or any documents from the Original Owners to change the ownership solely to White. (ECF No. 21 ¶¶ 13, 25, 61, 62; ECF No. 28 pp.2, 3.) However, American General's computer records indicate a change in the ownership of the Policy to White. (ECF No. 14-1 p.2; ECF No. 48-2 p.7.) Apparently for years, American General issued regular statements to White indicating her sole ownership of the Policy. (ECF No. 19 p.12 ¶ 16; ECF No. 21 p.3 ¶ 16.)

On December 20, 2019, White submitted a request to American General to change the beneficiary designation for the Policy to herself as the sole primary beneficiary. (ECF No. 1 ¶ 10.) Thus, by January 3, 2020, according to American General's records, White was both the owner and sole beneficiary under the Policy. (ECF No. 1-2 p.2; ECF No. 14-2 p.2.)

Donald died on January 30, 2021. (ECF No. 1 ¶ 11.) Because of certain withdrawals made by White from the cash value of the Policy before Donald's death (Prior Distributions), the Policy's death benefit at the time of Donald's death was $641,463. (*Id.* ¶ 11; ECF No. 28 p.3.) On February 11, 2021, White submitted a claim for the benefits of the Policy. (ECF No. 1 ¶ 12.)

On April 8, 2021, counsel for Donald's estate (Estate) contacted American General to advise that the Estate disputed the validity of the change of the Policy's ownership to White and the change of the beneficiary designation solely to White. (*Id.* ¶ 13.) The Estate's counsel also provided American General with a change of ownership form dated December 28, 2019, which purported to change the ownership of the Policy from "Amy McDermott, Donna McDermott[,] and

Gregory J. McDermott to Donald McDermott." (*Id.* ¶ 14.) In other words, this change of ownership form — purportedly prepared 13 months before Donald's death and eight days after White submitted her request to be designated as the sole beneficiary of the Policy — designated Donald as the sole owner of the Policy. American General has no record of receiving this change of ownership form. (*Id.*)

American General filed the complaint on September 22, 2021. (ECF No. 1.) I held an initial scheduling conference on March 1, 2022 and entered a scheduling order on March 2, 2022. (ECF No. 29.) I also scheduled a settlement conference for May 23, 2022. (*Id.* ¶ 1.)

### A. Settlement Conference

Because of a scheduling conflict, the settlement conference was held on May 26, 2022. (ECF No. 35; minute entry before ECF No. 36.) The parties submitted confidential settlement memoranda prior to the settlement conference. At the settlement conference, Edward Anthony Velky, Esq. and David Donahue, Esq. appeared for American General, Erick Frins, Esq. appeared for White, and Shelly L. Friedman, Esq. appeared for the McDermott Siblings. (ECF No. 41 pp. 1, 2.) All of the defendants also appeared for the settlement conference. The settlement conference was conducted by Zoom and lasted approximately two and one-half hours, after which a settlement was reached.

The terms of the settlement were for each of the McDermott Siblings to receive $242,500 from the Policy from American General, for a total of $727,500. However, the remaining death benefit at the time of Donald's death was $641,463 — an amount insufficient to cover the total payment to the McDermott Siblings. Accordingly, White agreed to "return" $66,037 to American General, and American General agreed to "contribute" $20,000 to the pot of money, to pay the McDermott Siblings a total of $727,500. I placed the terms of the settlement on the record. (ECF No. 41 pp. 4, 5.)

After I placed the terms of the settlement on the record, I had the following colloquy with counsel:

> Mr. Donahue: Okay. And then, I guess, just as a practical matter, you know, our preference — and I apologize — we didn't bring this up before, but our preference would be to stage this so that our — we would receive the $66,037 from Ms. White before our payment would be triggered.
>
> The Court: All right. Well, that's an issue that you all can work on the mechanics. I don't see any issue with that. But if that becomes an issue, we can discuss it. I don't know why that would be an issue because the obligation would be due from Ms. White whether there was payment from [American General][2] or not. So doesn't sound like an issue to me. Ms. Friedland, anything? Anything further?
>
> MS. FRIEDLAND: I was just going to say, on that, I mean, I don't — I think you're right, Your Honor. We can work out those details, but just in terms of that timing issue, it's going to depend on how much time we're giving Ms. White to pay [American General] back. So if it's reasonable amounts of time, we don't have a problem with that. If it's a bunch of time —
>
> (Simultaneous conversation)
>
> THE COURT: Yeah, those are the mechanics. You know, whatever — 60 days — it's usually something like that. We usually give a little bit of time, but it should be from the date of the settlement today or tomorrow when Mr. Moriarty calls me, not teed off on the signing of a settlement agreement, because that can go 30 days or maybe even longer. But do try to get settlement agreement together. It doesn't sound like that it would be overly complicated. Just the mechanics of it may be the only thing that would require any detail. But I would

---

[2] I mistakenly referred to American General as "AIG" during the settlement conference and in placing the settlement on the record.

> imagine [the] settlement agreement, [will have] the payment terms and the general releases for everybody.

(ECF No. 41 pp. 5, 6.)

I should note that the settlement was "tentative" and contingent on American General's counsel making a telephone call to confirm American General's final approval of the settlement. (*Id.* p. 4.) On May 31, 2022, American General's counsel advised defendants and me that he had received approval from American General for the settlement. (ECF No. 46-2.)

### B. White Backs Out of the Settlement

On June 10, 2022, White's counsel sent an email to counsel advising that White "no longer wishes to proceed with the settlement as previously agreed upon." (ECF No. 46-2 p. 20.) Rather, White proposed a revised-settlement whereby each of the McDermott Siblings would receive $200,000 from the Policy with White being entitled to the remaining benefit under the Policy. On July 20, 2022, the McDermott Siblings filed a letter requesting that this matter be reopened because "White is unwilling to move forward with the settlement." (ECF No. 42.)

### C. The Parties' Arguments

American General argues that the parties agreed to the "essential terms" of the settlement: (1) each of the McDermott Siblings would receive $242,500; (2) American General would contribute $20,000 on top of the remaining $641,463 value of the Policy for the payment to the McDermott Siblings; (3) White would "contribute" $66,037 toward the payment to the McDermott Siblings; and (4) general releases would be exchanged between the parties. (ECF No. 46-1 p. 5.)

White argues that the settlement is "a substantial and unfair resolution of a claim," that she was "disoriented at the settlement conference," and that she "realized the unfairness of the proposed settlement shortly after the settlement conference." (ECF No. 48 p. 6.) She also claims that "she did not receive

5

adequate representation from her then counsel."[3]  (*Id.*)  She asks the Court to conduct a "fairness hearing" to determine "the fairness and the reasonableness of the proposed settlement." (*Id.* p. 9.)  However, the meat of White's argument is that:

> The proposed settlement left out a crucial part.  Although it … was agreed that Ms. White would pay $66[,]037, a crucial part was left unresolved.  That is, what happens if Ms. White doesn't pay this sum.  Is American General obligated to make up the difference and then look to Ms. White for indemnification or are the [McDermott Siblings] forced to take $66,037 less for the settlement.

(*Id.*)  White argues that the parties' "failure" to agree on what happens if White does not make payment of $66,037 is a missing "essential term" of the "proposed settlement," thereby precluding its enforcement.  (*Id.*)

The McDermott Siblings argue that, while they agree that the settlement agreement is enforceable, "now that White is refusing to move forward with the agreed-upon settlement, [they] believe that the case should be re-opened to permit them to move for summary judgment." (ECF No. 47 p. 2.)  Further, the McDermott Siblings argue that if the Court were to enter an order enforcing the settlement, American General should be ordered to pay the full amount due to them because "collecting the funds from White is a burden to be borne by [American General], not [them]." (*Id.* p. 3.)

American General argues in reply, in part, that it is not obligated to remit the full amount of the payment to the McDermott Siblings.  Rather, according to American General, the settlement agreement called for White to contribute $66,037 for the payments to the McDermott Siblings.

---

[3] John J. Petriello, Esq., substituted as White's counsel on June 14, 2022.  (ECF No. 37.)

## II. DISCUSSION

### A. **Standard**

State law relating to the construction and enforcement of contracts govern a federal court's enforcement of contracts. *Excelsior Ins. Co. v Pennsbury Pain Ctr.*, 975 F.Supp. 342, 348–49 (D.N.J. 1996). Settlement of litigation ranks high in the public policy of New Jersey. *Pascarella v. Bruck,* 190 N.J.Super. 118, 125 (App.Div.), *certif. denied,* 94 N.J. 600 (1983). "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." *Lahue v. Pio Costa*, 263 N.J.Super. 575, 596 (App.Div. 1993) (quoting *Bistricer v. Bistricer*, 231 N.J.Super. 143, 145 (Ch.Div. 1987)), *certif. denied*, 134 N.J. 477 (1993); *see Gonzalez v. Pace Motor Lines, Inc.*, No. 19-21202, 2022 WL 2439859, at *2 (D.N.J. Feb. 22, 2022) (recommending enforcement of a settlement agreement, and holding the "addition of terms to effectuate the settlement that do not alter the basic agreement will not operate to avoid enforcement of an agreement to settle a litigated matter"), *adopting report and recommendation*, 2022 WL 2439860 (D.N.J. Mar. 9, 2022). Under New Jersey law, moreover, a contract arises from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms. *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992).

A settlement agreement should be enforced if the parties orally agree on the essential terms while still contemplating the execution of a formal document memorializing their undertaking. *United States v. Lightman*, 988 F.Supp. 448, 459 (D.N.J. 1997); *McDonnell v. Engine Distribs.*, No. 03-01999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007), *aff'd*, 314 F.App'x 509 (3d Cir. 2009); *Kennedy v. Samsung Elecs. Am., Inc.*, No. 14-04987, 2018 WL 2296702, at *5 (D.N.J. May 21, 2018). Accordingly, "[w]here a party to an agreement-

7

in-principle suddenly changes its mind and refuses to execute the written contract without explanation, the court must enforce the agreement." *Trian Grp., Ltd. P'ship v. Accident & Cas. Ins. Co. of Winterhur*, No. 98-01026, 2006 WL 1784310, at *5 (D.N.J. June 26, 2006). Additionally, a court should "treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement." *Gonzalez*, 2022 WL 2439859, at *3 (citing *Washington v. Klem*, 388 F.App'x 84, 85 (3d Cir. 2010)).

### B. The Parties Agreed to the Essential Terms of a Binding Settlement

The terms of the settlement reached at the settlement conference on May 26, 2022 were simple: (1) the McDermott Siblings are to each receive $242,500 "from the life insurance policy," for a total of $727,500; (2) White is "to return $66,037 to [American General]"; and (3) American General is to contribute $20,000 toward the payment to the McDermont Siblings. These are the essential terms of the agreement. The parties' disagreement on how and when the payments are to be made are the "mechanics" of the settlement, which does not upset the validity and enforceability of the settlement.

While White does not wish to proceed with the settlement, that is not an option for her because she entered into a binding settlement agreement. White was present throughout the settlement conference and did not express any objection to the terms of the settlement as I was placing the settlement on the record. Also, White claims that she was "disoriented" at the settlement conference and that she was not adequately represented at the settlement conference. I reject these contentions, as the settlement conference was a lengthy process, which was conducted over a number of hours, with the parties and their counsel having been separated into different breakout rooms. *See Vandergrift v. Pennsauken Sch. Dist.*, No. 12-07646, 2017 WL 6566139, at *10

(D.N.J. Dec. 22, 2017) (rejecting a claim that a settlement should be voided because of duress, as plaintiff was "able to consult with his attorneys" and there was "[a]bsent a demonstration that [the] settlement was procured by fraud, or some similarly compelling reasons"). White's after-the-fact belief that the settlement may be "unfair" to her is not a basis to invalidate the settlement. Her change of mind does not change the validity of the settlement. *See Trian Grp., Ltd. P'ship*, 2006 WL 1784310, at *5.

The essential terms of the settlement agreement were placed on the record, without objection and, accordingly, White must abide by them. Her obligation under the settlement agreement is to "return" $66,037 to American General. Those funds, of course, are proceeds she received from the Prior Distributions from the Policy. And American General's obligation under the settlement agreement is to pay each of the McDermott Siblings "$242,500 from the life insurance policy." Those payments are not contingent on the "return" of $66,037 from White.

Indeed, American General's counsel confirmed that he "didn't bring this up before" the parties agreed to the terms of the settlement, but that American General's "preference would be to stage" the payments so that American General "would receive the $66,037 from … White before [its] payment would be triggered." (ECF No. 41 p.5.) This preference was not an essential term reached during the settlement conference but a request by American General for the parties to accommodate its "preference." Such a preference is a request relating to the "mechanics" of how and when payments are to be made and a disagreement over such terms does not obviate the binding settlement agreement. *See Lutman v. The Sanctuary at Cherry Hill, LLC*, No. A-1776-19T1, 2021 WL 79186, at *1–4 (N.J.App.Div. Jan. 11, 2021) (enforcing a settlement where defendant attempted to inject a contingency, after the agreement was reached, that payment would only be due after it sold its business); *see also Funk v. Cigna Grp. Ins.*, No. 08-05208, 2012 WL 870220, at *1

& n.5 (D.N.J. Mar. 14, 2012) (enforcing a settlement, and holding that the failure to consummate a "side deal" between defendants was not a condition precedent to the settlement between plaintiff and defendants). American General, of course, is entitled to the "return" of the $66,037 from White and can proceed accordingly against her if she fails to live up to her end of the bargain.

## RECOMMENDATION AND ORDER

I issue this report and recommendation upon my review of the papers and without oral argument. *See* Fed.R.Civ.P. 78(b); *see also* L.Civ.R. 78.1(b). For the reasons stated above, it is:

1. **RECOMMENDED** that the Motion be **GRANTED**, and if the recommendations herein are confirmed, that the Court enter an order: (a) requiring White to pay $66,037 to American General within 30 days of the order; (b) requiring American General to pay $242,500 to each of the McDermott Siblings within 45 days of the order;[4] and (c) requiring the parties to exchange general releases following receipt and clearance of the payments.

2. **ORDERED** that the Clerk of the Court administratively terminate the Motion (ECF No. 46) pending the review of this report and recommendation.

3. **ORDERED** that the Clerk of the Court activate this report and recommendation to indicate that it requires further action by the District Judge.

---

[4] *See Natale v. E. Coast Salon Servs., Inc.,* No. 13-01254, 2016 WL 659722, at *5 (D.N.J. Feb. 18, 2016) (holding that in order to enforce a settlement, a court can supply the legally appropriate terms of payment and strike certain provisions to the extent they may be inconsistent with payment of the settlement proceeds).

4.    **ORDERED** that the parties have **14 days** to file any objections to this report and recommendation pursuant to Local Civil Rule 72.1(c)(2).

                                                             */s/ Edward S. Kiel*
                                                             **EDWARD S. KIEL**
                                                             **UNITED STATES MAGISTRATE JUDGE**

Date:    November 21, 2022